| | | |
|---|---|---|
| BLAKE H. MOORE, M.D., individually and as the Personal Representative of the Estate of Angela Lynn Moore, and JUDITH A. PARKELL, | ) ) ) ) ) | Civil Action No.: 4:07-3009-TLW-TER |
| Plaintiffs, | ) ) | **REPORT AND RECOMMENDATION** |
| -vs- | ) ) ) | |
| STATE OF SOUTH CAROLINA, et al., | ) ) | |
| Defendants. | ) ) | |

## I.    INTRODUCTION

Plaintiffs, proceeding pro se, assert twenty causes of action in their Complaint, including federal causes of action under 42 U.S.C. § 1983, 28 U.S.C. § 2254, the Indian Child Welfare Act, the Immigration and Naturalization Act, and the Racketeer Influenced and Corrupt Organizations Act. This Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331. They also assert state law causes of action for wrongful death and survival, intentional infliction of emotional distress, defamation per se, tortious rape and conspiracy to commit sexual assault on a minor, tortious interference with existing and prospective contractual relationships, breach of contract, promissory estoppel, legal malpractice, medical malpractice, violation of S.C. Code Ann. § 20-7-690(A), and civil conspiracy. The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. Plaintiffs also assert claims for "violation of kinship rights" and "class action."

Presently before the Court are Doby's Motion for Summary Judgment (Document # 190), Robertson's and Meyer's Motion for Summary Judgment (Document # 211), McFadden's Motion for Judgment on the Pleadings and/or Summary Judgment (Document # 213), Jarrett's and Jenkinson's Motion for Summary Judgment (Document # 214), Flesch's Motion for Summary Judgment (Document # 217), Sobti's Motion for Summary Judgment (Document # 218), Taggart's Motion for Summary Judgment (Document # 219), Wilson's and Dale's Motion for Summary Judgment (Document # 220), and Landrum's, Yvonne Davis', Hawkins, Culley's, Love's, Taylor's, Omelchenko's and Gloria Davis' Motion for Summary Judgment (Document # 221).[1]

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e),DSC. Because the pending motions are potentially dispositive, this Report and Recommendation is entered for review by the district judge.

## II.     RELEVANT FACTS AND PROCEDURAL HISTORY

### A.     The Parties

Plaintiff Parkell is Plaintiff Moore's mother. Plaintiff Moore was the adoptive father of the minor children at issue in this case. He is a Board Certified General Surgeon and Fellow of the American College of Surgeons who practices medicine in Kingstree, South Carolina.

Defendant Doby is an attorney who represented Department of Social Services (DSS) in the Abuse and Neglect case and the Termination of Parental Rights (TPR) case. McFadden is an attorney who represented the Moores for a period of time (between March of 2003 and August 25,

---

[1]Managed Treatment Services and Fran Hayes are also named as Defendants in this action, but it does not appear that they have filed any dispositive motions.

2003) in the abuse and neglect case filed by DSS.

Robertson and Meyer are attorneys and, at all times relevant to this action, served as legal counsel to Williamsburg Regional Hospital. Jenkinson is an attorney who has and still does represent Williamsburg Regional Hospital on certain matters.

Jarrett is an attorney who is partnered with Jenkinson and who has represented Moore in the incorporation of his medical practice and to purchase a home. He also represented Plaintiff's wife in a property damage claim. He has also been retained by DSS from time to time as a contract attorney to prosecute abuse and neglect cases.

Taggart was an attorney who served as general counsel for the S.C. Guardian ad litem program beginning in 2005. She became involved with the DSS TPR case against Moore when Moore appealed the decision on June 27, 2005. A Suggestion of Death (Document # 267) was filed on June 3, 2009, indicating that Taggart passed away on April 2, 2009. Dale was the court-appointed Guardian ad Litem for the children at issue in this case for the first DSS case filed in March of 2003. She was replaced by Gloria (Deborah) Wilson[2] on July 9, 2003. Gloria (Deborah) Wilson remained as Guardian ad Litem for the children until the completion of the case on or about August 28, 2007.

Flesch is a licensed social worker who was retained by Managed Treatment Services (MTS), a division of DSS, in 2003 to treat the three minor children at issue in this case for previously-diagnosed posttraumatic stress disorder. Dr. Sobti is a psychiatrist who was employed by the South Carolina Department of Health between May of 2003 and October of 2003, and who treated one of the children at issue in this case. Landrum is the Program Director for MTS. Yvonne (Avone)

---

[2]Defendants refer to Gloria Wilson as Deborah Wilson.

Davis[3] is a Human Services Coordinator I/Children's Services Coordinator III with MTS. Hawkins was a Clinical Services Program Director with MTS from 2003 until 2007. Culley is a psychologist who worked as the Director of Clinical Services for MTS in 2003.

Love is a Human Services Supervisor for DSS in Williamsburg County and was serving in that position at the times relevant to this action. Taylor was a Human Services Specialist II with DSS at all times relevant to this action. Omelchenko is a Human Services Specialist II with DSS in Clarendon County and was serving in that position at the times relevant to this action. Gloria Davis was a Foster Care Worker with DSS in Williamsburg County during 2003.

## B.    The South Carolina Family Court Actions

This action arises out of three South Carolina family court matters beginning in 2003. On March 7, 2003, DSS took Blake Moore, M.D. ("Dr. Moore") and Angelalynn Moore's three children[4] into emergency protective custody. South Carolina Department of Social Services v. Blake Moore & Angelalynn Moore, 03-DR-45-140. Doby Aff. at ¶ 5. DSS took the children into emergency protective custody because of alleged abuse and/or neglect. Id. at ¶ 5-7. Thereafter, DSS elected to pursue the termination of the Moore's parental rights and a new action, an action for the termination of parental rights (TPR case), was filed by DSS on August 20, 2004. South Carolina Department of Social Services v. Blake Moore & Angelalynn Moore, 04-DR-45-357. Id. at ¶ 9.

The trial of the termination of parental rights lasted for five days (May 2, 2005 – May 6, 2005). Id. at ¶ 11. The Honorable Berry L. Mobley issued an Order on June 27, 2005 terminating

---

[3]Defendants refer to Yvonne Davis as Avone Davis.

[4]All three children were adopted by the Moores in 1999.

the parental rights of Blake Moore.[5] Id. at ¶ 12 and Ex. 1 to Doby Aff. Moore appealed the June 27, 2005, Order of Judge Mobley to the South Carolina Court of Appeals. Id. at ¶ 13. In December of 2006, the South Carolina Court of Appeals Affirmed the June 27, 2005 Order of Judge Mobley. Id. at ¶ 14 and Ex. 2 to Doby Aff. No further appeals were taken and the parental rights of Moore were terminated.

In addition to the TPR case, DSS filed another action against Moore, alleging sexual abuse with one of the adopted children. South Carolina Dept. of Social Services v. Blake Moore, 04-DR-45-358. On July 15, 2005, after the entry of Judge Mobley's order terminating Moore's parental rights, DSS elected to file a Motion for voluntary nonsuit. The Order dismissing the sexual abuse action, with prejudice, was filed on July 15, 2005.

### C.     Moore's Hospital Privileges at Williamsburg Regional Hospital

On September 13, 2004, Breton C. Juberg, M.D., Chief of Staff of Williamsburg Regional Hospital (the "Hospital") advised Plaintiff Moore by letter that his clinical staff privileges at the Hospital had been summarily suspended as of that date based upon serious allegations of sexual misconduct with a minor child as described in a complaint filed by the South Carolina Department of Social Services ("DSS") on August 20, 2004. Robertson Aff. at ¶ 6 and Ex. A.

On September 15, 2004, John C. Hales, Jr., Chief Executive Officer of the Hospital, advised Plaintiff Moore by letter that at a meeting held on the evening of September 13, 2004, the Hospital's Medical Executive Committee (the "MEC") voted to continue the indefinite suspension of Moore's clinical privileges. Moore was further advised in Mr. Hales' letter of September 15, 2004, of his right

---

[5]Moore's wife, Angelalynn Moore, died during the pendency of the termination of parental rights action.

to request an administrative hearing before an Ad Hoc Committee of the Medical Staff. Robertson Aff. at ¶ 7 and Ex. B. Moore exercised this right which resulted in an administrative hearing before an Ad Hoc Committee of the Medical Staff that was convened on November 22, 2004. Id.

On October 8, 2004, Robertson wrote Dorothy J. Killian, Esq., Office of General Counsel of DSS, requesting the Hospital's access to the records of DSS on Moore pursuant to S.C. Code Ann. § 20-7-690(15) and (16). Robertson Aff. at ¶ 14.

On October 18, 2004, in response to Robertson's letter of October 8, 2004 to Ms. Killian, Marion S. Riggs, attorney, pursuant to the instructions of the Office of General Counsel of DSS, sent certain DSS records and reports to Robertson which were deemed relevant to the allegations that existed with regard to the Hospital and Plaintiff Moore. Robertson Aff. at ¶ 15 and Ex. 5.

On October 25, 2004, Robertson acknowledged receipt of the DSS records and reports from Mr. Riggs and agreed that only the materials provided by Mr. Riggs would be used by the Hospital at the November 22, 2004 administrative hearing. Robertson Aff. at ¶ 16 and Ex. F.

The administrative hearing on November 22, 2004, began at approximately 6:00 p.m. and was adjourned at approximately 8:37 p.m. Testimony was taken and Plaintiff Moore was present along with his attorney, C. William Hinnant, Jr. Robertson Aff. at ¶ 8.

At the administrative hearing on November 22, 2004, Breton C. Juberg, M.D., Chief of Staff, represented the interests of the Hospital. Robertson Aff. at ¶ 17.

Dr. Juberg introduced as evidence the DSS Complaint date stamped August 23, 2004, and the documents which were provided by Mr. Riggs and which the DSS had deemed relevant to the allegations that existed with regard to Moore. Robertson Aff. at ¶ 18.

The DSS Complaint and records were introduced into evidence by Dr. Juberg, without

objection, by C. William Hinnant, Jr., attorney for Moore. Robertson Aff. at ¶ 19.

The hearing was adjourned in order for the Ad Hoc Committee to obtain additional information from Plaintiff Moore and was reconvened on January 6, 2005, to review the additional information Moore provided. The hearing was again reconvened on January 24, 2005, for further deliberation, after which deliberation the hearing was adjourned. Robertson Aff. at ¶ 8.

On February 2, 2005, John C. Hales, Jr., advised Plaintiff Moore by letter that the Ad Hoc Committee had determined that the summary suspension of his clinical staff privileges be upheld and continued indefinitely pending a judicial resolution of the complaints by DSS presenting allegations of sexual abuse against a minor child. The suspension was deemed appropriate and in the best interest of patient care at the Hospital on account of the seriousness of the allegations against Plaintiff Moore, the intimate relationship between physician and patient, and the absolute duty of the Hospital to protect patient safety. Robertson Aff. at ¶ 9 and Ex. C.

Plaintiff Moore then exercised his right to appellate review of the Ad Hoc Committee's determination by the Advisory Board of the Hospital (the "Board"), as provided for under the Medical Staff Bylaws, and the appellate review of Plaintiff Moore by the Board was convened on April 11, 2005, and reset and reconvened on April 18, 2005, to receive additional information. Robertson Aff. at ¶ 10.

On April 18, 2005, the appellate review by the Board was concluded with the decision that the summary suspension of Plaintiff Moore be upheld and that the suspension be continued indefinitely pending judicial resolution of the complaints by DSS against Plaintiff Moore. Robertson Aff. at ¶ 11.

### D.     The First Federal Court Action

In October of 2005, Moore hired separate counsel to file an action in the United States District Court ("the first federal court action") against fourteen Defendants. The case caption for the first federal court action was: <u>Blake H. Moore, MD, FACS, Individually and as the Personal Representative of the Estate of Angela Lynn Moore and Kingstree Surgical Associates, LLC v. Williamsburg Regional Hospital, John Hales, Breton Juberg, MD, Raymond Allen, MD, Evelyn Ansa, MD, Joel Bo naparte, MD, Bernadette Bonaparte, MD, Kenneth Johnson, MD, Steve Corey, DPM, Michelle Corey-Butterworth, DPM, Kevin Springle, MD, Bashir Obeidou, MD, Gilbertaas Rimkus, MD and Marion Riggs, Jointly and Severally,</u> 4:05-cv-02940-TLW-TER.

The Plaintiffs asserted the following claims in the first federal court action: (1) 42 § 1983, (2) wrongful death S.C. Code Ann 15-51-10, (3) Federal Antitrust violation under Section 1 of the Sherman Act, (4) Federal Antitrust violation under Section 2 of the Sherman Act, (5) Intentional Infliction of Emotional Distress, (6) Tortious Interference with Existing Contractual Relations, (7) Tortious Interference with Prospective Contractual Relations, (8) Negligence in Peer Review, (9) Defamation Per Se, (10) Breach of Contract, (11) Promissory Estoppel, (12) Violation of S.C. Code 20-7-690, (13) Survival Action, (14) Unfair Trade Practices Act, (15) Civil Conspiracy and (16) Violation of Immigration and Naturalization Act. The first federal court action is based upon an adverse peer review by the Hospital. Eleven out of the sixteen causes of action from the first federal court action reappear in the present civil action pending with this Court. The parties entered into a Consent Order dismissing Plaintiffs' wrongful death and survival action claims with prejudice. The district judge granted summary judgment as to the remaining claims.

### E.    The Present Action

Plaintiffs filed the present action on September 5, 2007, and filed an Amended Complaint on

December 12, 2007.  The state Defendants were dismissed by Order dated September 23, 2008.  The pending motions presently before the Court were filed between September 26, 2008, and February 17, 2009.  Plaintiffs filed one Response to all motions on March 30, 2009.  Plaintiffs failed to attach any evidentiary support to their Response.

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION[6]

### A. Standing

#### 1. Plaintiff Parkell

Plaintiff Judith Parkell's only connection to this matter is that she is the mother of co-Plaintiff Moore. Ms. Parkell was not involved in the underlying family Court cases. Ms. Parkell lacks any standing to assert any claims in this case. "Article III of the United States Constitution confines the jurisdiction of federal courts to actual cases 'Cases' and 'Controversies,' and ... the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." Clinton v. City of New York, 524 U.S. 417, 429-30 (1998) (quoting Whitmore v. Arkansas,

---

[6]The undersigned will address the arguments raised by Defendants rather than each Motion separately.

495 U.S. 149, 155 (1990)).

In order to have standing, a Plaintiff

Must have suffered an injury in fact, i.e., an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, her injuries must be fairly traceable to the actions of the Defendants, rather than the result of actions by some independent third party not before the court. Third, it must be likely, as opposed to merely speculative, that her injuries will be redressed by a favorable decision.

Dixon v. Edwards, 290 F.3d 699, 711 (4th Cir. 2002) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)) (internal citations and quotations omitted).

Ms. Parkell cannot satisfy the first prong of standing because, despite her general allegations that she should have been awarded custody of the minor children, she cannot establish that she has suffered an injury in fact, i.e. an invasion of a legally protected interest. Thus, any claims asserted by Plaintiff Parkell should be dismissed.

### 2.    28 U.S.C. § 2254

Plaintiff Moore appears to be seeking an order releasing the minor children from state custody. A person seeking relief pursuant to § 2254 must show that he is "in custody pursuant to the judgment of a State Court ... in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2254(a). The only proper "petitioner" in a federal habeas corpus action is the person who is actually in the custody of a state or the federal government. As a result, Plaintiff has no standing to bring this action because he is not the one "in custody" pursuant to the family court order. See Maleng v. Cook, 490 U.S. 488, 490, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (an individual must be "in custody" in order to be eligible for federal habeas corpus relief); Meck v. Commanding Officer, Valley Forge Gen. Hosp., 452 F.2d 758 (3d Cir.1971) (same); see also 28 U.S.C. § 2254;

<u>Pringle v. Ct. of Common Pleas</u>, 744 F.2d 297, 300 (3d Cir.1984). Thus, Plaintiff's § 2254 claim should be dismissed.

**B.    Collateral Estoppel**

Defendants argue that Plaintiffs claims are barred by the doctrine collateral estoppel in light of the rulings in the first federal action. None of the Defendants involved in this action were Defendants in the first federal action. Collateral estoppel, or issue preclusion, "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation." <u>Sedlack v. Braswell Servs. Group, Inc.</u>, 134 F.3d 219, 224 (4th Cir.1998). Defensive collateral estoppel bars a claim where a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost against another defendant. <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326 n.4 (1979). Collateral estoppel may be used defensively as a bar if the plaintiff had a full and fair opportunity to litigate the issues in the previous suit; mutuality of the parties is not required. <u>Blonder-Tongue Labs., Inc. v. University of Illinois Found.</u>, 402 U.S. 313 (1971); <u>Thurston v. United States</u>, 810 F.2d 438 (4th Cir. 1987).

Although Plaintiff raises many of the same causes of action in this case as he did in the first federal action, the facts upon which he bases his claims are different. The first federal action was based upon an adverse peer review by Williamsburg Regional Hospital. Plaintiff named the Hospital, the CEO of the Hospital, and individual physicians who served on the Hospital's Medical Executive Committee as Defendants. Although Plaintiff sets forth in the first federal action factual allegations regarding the family court actions, his actual claims arise out of the actions taken to revoke his privileges at the Hospital. In the present action, the named Defendants, except Robertson and Meyer, were in some capacity involved or alleged to be involved in the family court actions, and

Plaintiffs claims here arise out of the actions taken in connection with those proceedings. The issues of fact and law in the present case are not identical to those actually decided in the first federal action.  Thus, collateral estoppel is not applicable here.

### C.        42 U.S.C. § 1983

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

It is important to first determine whether Defendants were acting under color of state law during the actions alleged by Plaintiff.  Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes "state action." See, e.g., Blum v. Yaretsky, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). To qualify as state action, the conduct in question "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and "the party charged with the [conduct] must be a person who may fairly be said to be a state actor." Lugar v.

Edmondson Oil Co., 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ("Careful adherence to the 'state action' requirement ... also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed."); see U.S. v. Int 'l Brotherhood of Teamsters, Chauffeurs, Warehousemen Helpers of Am., AFL-CIO, 941 F.2d 1292 (2d Cir.1991).

Defendants Robertson, Meyer, Jarrett, Jenkinson, and McFadden are all attorneys licensed to practice in South Carolina. At all times relevant to this action, Robertson and Meyer served as legal counsel for Williamsburg Regional Hospital. Meyer Aff. at ¶¶ 4, 20; Robertson Aff. at ¶¶ 4, 33.

In addition, although the initial pleadings in the DSS case were prepared using "blue backs" from Jarrett, Jenkinson & Kellehan, PA, use of those "blue backs" was a mistake by a DSS administrative specialist and neither Jarrett nor Jenkinson participated in the DSS actions against Plaintiff. Jarrett Aff. at ¶ 9; Jenkinson Aff. at ¶ 8. Furthermore, Jarrett's name was incorrectly listed as the attorney for DSS on the Permanency Planning Notice that was served on Plaintiff in March of 2007. Jarrett Aff. at ¶ 10. Jarrett did not represent DSS in the matters against Plaintiff nor did he provide any assistance to those who did represent DSS. Id. at ¶ 11.

McFadden was retained by the Moores to represent them in the abuse and neglect case brought against them by DSS. McFadden Aff. at ¶ 4. Because of a disagreement between McFadden and Moore about what defenses should be presented, McFadden was relieved as counsel for the Moores on September 18, 2003. Id. at ¶¶ 36-37.

An attorney, whether retained, court-appointed, or a public defender, does not act under color of state law, which is a jurisdictional prerequisite for any civil action brought under 42 U.S.C. § 1983. See Deas v. Potts, 547 F.2d 800 (4th Cir.1976) (private attorney); Hall v. Quillen, 631 F.2d 1154, 1155-56 & nn. 2-3 (4th Cir.1980), cert. denied, 454 U.S. 1141, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982) (court-appointed attorney); Polk County v. Dodson, 454 U.S. 312, 317-24 & nn. 8-16, 102 S.Ct. 445,

70 L.Ed.2d 509 (1981) (public defender). See also Lugar v. Edmondson Oil Co., 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ("Careful adherence to the 'state action' requirement ... also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed."). Private conduct is outside the reach of a 1983 action, as courts have found "merely private conduct, no matter how discriminatory or wrongful" is not actionable under § 1983. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S.Ct. 977, (1999). Thus, Plaintiff cannot maintain his § 1983 claims against these Defendants.

Defendants Doby and Taggart are also attorneys licensed to practice law in South Carolina. They both represented DSS, a state agency, at some point during the family court actions against Plaintiff. Doby Aff. at ¶¶ 5-14; Taggart Aff. at ¶ 3. Nevertheless, Doby and Taggart are entitled to prosecutorial immunity against Plaintiff's § 1983 claims. Prosecutors enjoy absolute immunity from Section 1983 suits for damages when the attorney acts within the scope of his prosecutorial duties. Imbler v. Pachtman, 424 U.S. 409, 420, 96 S.Ct. 984, 990 (1976). The United States Supreme Court has held that a prosecutor's conduct in initiating prosecution and his conduct preliminary to the initiating of a prosecution are protected, as is the conduct within the courtroom wherein the prosecutor acts as an advocate for the State. Buckley v. Fitzsimmons, 509 U.S. 259, 272, 113 S.Ct. 2606, 2615 (1993). The Fourth Circuit has recognized that attorneys for the Department of Social Services are expressly afforded prosecutorial immunity. See Weller v. Dept. of Social Services for the City of Baltimore, 901 F.2d 387, 397 (4th Cir. 1990). Therefore, because the undisputed facts establish that Doby and Taggart wee attorneys for the state acting within the scope of their employment, they are immune from suit brought pursuant to § 1983.

Defendants Dale and Gloria (Deborah) Wilson were at different times appointed as Guardians ad litem for the Moore children. Guardians ad litem are not state actors for purposes of § 1983,

because they give their "undivided loyalty to the minor, not the state." <u>Meeker v. Kercher</u>, 782 F.2d 153, 155 (10th Cir.1986). Accordingly, Plaintiff's § 1983 claim is not actionable against these Defendants either.

Defendants Landrum, Yvonne (Avone) Davis, Hawkins, and Culley each worked for MTS, a division of DSS, at the times relevant to this action. Defendants Love, Taylor, Omelchenko, and Gloria Davis were employees of DSS at all times relevant to this action. Flesh is a social worker who was retained by MTS to treat the Moore children. Dr. Sobti is a psychiatrist who was employed by the South Carolina Department of Mental Heatlth and who treated one of the Moore children. Section 1983 only provides an avenue of relief for civil rights violations perpetrated by a "person" acting under color of state law. State officials acting in their official capacities are not "persons" within the meaning of § 1983 in complaints for monetary damages and are not subject to suit in their official capacities under the act. <u>Will v. Michigan Dep't Of State Police</u>, 491 U.S. 58, 65-68, 109 S.Ct. 2304, 2309-10, 105 L.Ed.2d 45 (1989). Plaintiff seeks a writ of habeas corpus, which, as discussed above, he lacks standing to do, and an expungement of the alleged false report in the National Practitioner Database, which would not apply to the DSS Defendants. The only other relief sought by Plaintiff is for monetary damages. Furthermore, there are no allegations in the Complaint that Plaintiff is suing any of these DSS Defendants in their individual capacities. Therefore, § 1983 relief is not available against these Defendants either.

Because none of Defendants are persons action under the color of state law or because they enjoy immunity from § 1983 claims, summary judgment should be granted as to Plaintiff's § 1983 cause of action. However, even if these Defendants were persons acting under color of state law, Plaintiff has produced absolutely no evidence that these Defendants violated any of his constitutional

rights.  Summary judgment is appropriate for this reason as well.[7]

### D.    Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901, <u>et</u> <u>seq</u>[8]

Section 1912(a) of the ICWA provides that

> [in] any involuntary proceeding in a State court, <u>where the court knows or has reason to know</u> <u>that an Indian child is involved</u>, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided, that the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.

(Emphasis added).

ICWA also provides that any parent from whose custody an Indian child was removed "may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912 and 1913."  25 U.S.C. § 1914.  <u>See also</u> <u>Doe v. Mann</u>, 415 F.3d 1038, 1041 (9th Cir. 2005) (concluding that § 1914 grants federal district courts the authority to invalidate state court actions that violate §§ 1911, 1912, and 1913).

The federal guidelines indicate that a court may have reason to believe a child is an Indian child if: a party to the case informs the court that the child is an Indian child; any public agency involved in

---

[7]To the extent Plaintiff brings his civil conspiracy claim under § 1983 rather than state law, that claim is barred as well for failure to present facts to support the allegations and because Defendants are not persons under § 1983 or have immunity from suit.  Further, Plaintiff's claim for "Violation of Kinship Rights," to the extent it is a cognizable claim, would be brought under § 1983 and, therefore, is also barred.

[8]Plaintiffs assert this cause of action Landrum, Yvonne Davis, Gloria Wilson, Taylor, Gloria Davis, Love, Omelchenko, Dale, Deborah Wilson, Doby, and Taggart, and each of these Defendants have addressed this issue in their Motions.

child protection services has discovered information which suggests that the child is an Indian child; the child gives the court reason to believe he or she is an Indian child; the residence or the domicile of the child or his or her biological parents is known by the court to be or is shown to be a predominately Indian community; or an officer of the court involved in the proceeding has knowledge that the child may be an Indian child. Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67584, 67586 (Nov. 26, 1979).

In this case, Plaintiffs have alleged a specific claim directed against several Defendants[9] for "violation of the ICWA." However, ICWA does not provide a private right of action against participants in the underlying court proceeding. See, e.g., Doe v. Mann, 285 F.Supp.2d 1229, 1240 (N.D. Cal. 2003). The Plaintiffs' remedy, if any at all, would be for the federal court to invalidate a state court's action. See 25 U.S.C. § 1914.

Even so, Plaintiffs fail to present sufficient evidence to support their ICWA claim. Plaintiffs fail to address ICWA in their twenty-seven page Response (Document # 261) to the Motions for Summary Judgment. Although Section V on page twenty-four of the Response is titled "ICWA & Jurisdiction," the three sentences under that section address jurisdiction generally and not ICWA.

However, Plaintiffs previously moved for summary judgment as to the ICWA claim (see Document # 73) and attached the Affidavit of Parkell in which she avers that she "attempted to file an Intervenor Brief with the South Carolina State Court, but was unsuccessful in doing so." Parkell Aff. at ¶ 6. In the Intervenor Brief, she argued that ICWA should apply to the family court proceedings because one of the children was of Native American heritage. Id. This unsuccessful attempt at filing a brief is insufficient to show that the family court knew or had reason to know of the child's heritage.

_____

[9]Including the state court defendants, who have already been dismissed from this action based upon Eleventh Amendment Immunity.

In the Order from the family court terminating Moore's parental rights (TPR Order) there is no mention that ICWA was raised by any of the parties as applicable. <u>See</u> Ex. 1 to Doby Aff. (attached to Doby's Motion for Summary Judgment). Furthermore, the South Carolina Court of Appeals' Opinion reveals that Moore did not make a motion for reconsideration of the family court's order nor did he raise on appeal the applicability of ICWA. <u>See</u> Ex. 2 to Doby Aff.

When the Court first addressed this issue, Plaintiffs were the moving parties, and the Court found that Defendants produced sufficient evidence to create a genuine issue of material fact as to whether the family court knew or had reason to know that an Indian child was involved, and, thus, denied Plaintiffs' Motion. Now, however, Defendants are the moving parties, and the evidence presented by Plaintiff is insufficient to create a genuine issue of material fact. Parkell's Affidavit reveals at most that notice of the applicability of ICWA was included in a document that was never filed with the family court. Thus, summary judgment in favor of Defendants is appropriate as to Plaintiffs' ICWA claim.

### E.   Immigration and Naturalization Act, 8 U.S.C. § 1324(a)[10]

It is not entirely clear what Plaintiffs are alleging with this cause of action. The Complaint states

> As part of plaintiff Dr. Moore and Kingstree Surgical Associates, LLC, business practice, need was determined and a J-1 Visa was obtained by Kingstree Surgical Associates and Dr. Blake Moore for physician, Gilbertas Rimkus. Concordant with the illegal actions enumerated in the defendants attempts to affect economic ruination upon plaintiff, defendants have conspired to violate the requirements of 8 U.S.C. § 1324(a) and 1324(b) and have worked with Williamsburg Regional Hospital an unnamed co-conspirator to continue to employ Rimkus in violations of guidelines as promulgated by the Department of Homeland Security. This has resulted in unfair and illegal economic competition.

------

[10]Plaintiff asserts this claim against Jarrett, Jenkinson, Robinson, Meyer, and Doby.

Amended Complaint at ¶ 95.

Subsection (a) of § 1324 provides criminal penalties for the smuggling and harboring of aliens, while subsection (b) provides for the seizure and forfeiture of any conveyance that has been used in the commission of a violation of subsection (a).  No private right of action exists for violation of § 1324.  See <u>Lopez v. Arrowhead Ranches</u>, 523 F.2d 924, 926 (9th Cir.1975) (8 U.S.C. § 1324 is a penal provision and creates no private right of action); <u>Flores v. George Braun Packing Co. Div. of Leonard & Harral Packing Co.</u>, 482 F.2d 279, 280 (5th Cir.1973)(per curiam) (holding that various provisions of the INA, including 8 U.S.C. § 1324, did not create a private right of action against employers who hired illegal aliens); <u>Chavez v. Freshpict Foods, Inc.</u>, 456 F.2d 890, 893 (10th Cir.), <u>cert.</u> <u>denied</u>, 409 U.S. 1042 (1972) (same);  <u>Mate v. Richard Dattner Architects</u>, 972 F.Supp. 738, 742 (S.D.N.Y.1997) (citizen "has no standing to assert a claim under the INA because the statute does not create a private right of action to redress a violation that results when an employer submits false information or illegally hires an alien when domestic workers are available"); <u>Collyard v. Washington Capitals</u>, 477 F.Supp. 1247, 1254 (D.Minn.1979) (INA does not create a private right of action); <u>Dowling v. United States</u>, 476 F.Supp. 1018, 1020-1021 (D.Mass.1979) (same). Furthermore, Plaintiffs have failed to present any evidence that the Defendants named in this cause of action have violated this statute.  Accordingly, summary judgment in favor of the Defendants is appropriate on this claim.

### F.    Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1959, 1961-1968

In order to prevail in a civil RICO action, a plaintiff must prove that defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1988), commonly known as "criminal RICO." In

so doing, he must prove six constituent elements: (1) that a "person" (2) through a "pattern of racketeering activity" (3) directly or indirectly invests in, or maintains an interest in, or participates in (4) an "enterprise," (5) the activities of which affect interstate or foreign commerce, and (6) that he was injured by reason of this activity. 18 U.S.C. §§ 1962(a)-(c), 1964(c). "Racketeering activity" is defined as criminal conduct in contravention of one of a list of criminal statutes. If a plaintiff fails to specifically allege the defendants committed one of the "predicate acts" identified in 18 U.S.C. § 1961(1), his RICO claim cannot withstand a motion to dismiss. See Bast v. Cohen, Dunn & Sinclair, P.C., 59 F.3d 492, 495 (4th Cir.1995).

Under his RICO cause of action, Plaintiff alleges that Defendants conspired to feloniously alter, delete or otherwise conceal evidence of a sexual assault, engage in false and malicious prosecution, and distribute and publish confidential DSS files. None of these activities fall within the definition of racketeering activity under 18 U.S.C. § 1961(1), and, even if they did, Plaintiff has failed to present any evidence that Defendants engaged in the alleged activities. Therefore, Plaintiff's RICO claim is without merit.

## G. Remaining State Law Claims

Plaintiff fails to submit sufficient evidence to create a genuine issue of material fact on any of his federal causes of action. Thus, it is recommended that summary judgment be granted as to those claims. If the district judge accepts this Report and Recommendation, then the original federal jurisdiction claims will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction

over state claims when all federal claims have been extinguished." <u>Shanaghan v. Cahill</u>, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). <u>See</u> <u>also</u>, <u>e.g.</u>, <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); <u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline to retain jurisdiction over Plaintiff's state law causes of action.

## IV. CONCLUSION

For the reasons set forth above, it is recommended that Doby's Motion for Summary Judgment (Document # 190), Robertson's and Meyer's Motion for Summary Judgment (Document # 211), McFadden's Motion for Judgment on the Pleadings (Document # 213), Jarrett's and Jenkinson's Motion for Summary Judgment (Document # 214), Flesch's Motion for Summary Judgment (Document # 217), Sobti's Motion for Summary Judgment (Document # 218), Taggart's Motion for Summary Judgment (Document # 219), Wilson's and Dale's Motion for Summary Judgment (Document # 220), and Landrum's, Yvonne Davis', Hawkins, Culley's, Love's, Taylor's, Omelchenko's and Gloria Davis's Motion for Summary Judgment (Document # 221) all be granted as to Plaintiff's federal causes of action, the court decline to exercise jurisdiction over the state law causes of action asserted by these Defendants.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

August 17, 2009
Florence, South Carolina

**The parties are directed to the important information on the following page.**